UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY LEON LIGONS, | No. 2:17-cv-1283-EFB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13, 15. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I. Background

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since September 15, 2012. Administrative Record ("AR") 175-83. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 106-110, 114-118. On April 23, 2015, a hearing was held before administrative law judge ("ALJ") Serena S. Hong. *Id.* at 42-72.

Plaintiff was represented by counsel at the hearing, at which he and a vocational expert testified. *Id.*

On September 25, 2015, the ALJ issued a decision finding that plaintiff was not disabled under section 216(i) and 223(d) of the Act. *Id*. at 23-37. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2014 (Exhibit 2D/1).

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 15, 2012 through his date last insured of June 30, 2014 (Exhibits 2D-5D) (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease (DDD) of the cervical and lumbar spine; depression; diabetes mellitus with peripheral neuropathy; obesity; osteoarthritis of the bilateral hips; Dupuytren's contractures; alcohol abuse; and fractures of the fourth and fifth fingers of the right hand (20 CFR 404.1520(c)).

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(a) except with a sit/stand option at will; no climbing of ladders, ropes or scaffolds; occasionally stoop, crouch or crawl; frequent fingering with the right upper extremity; avoid concentrated exposure to hazards such as unprotected heights and moving machinery; and simple, repetitive tasks.

\* \* \*

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born [in] 1967 and was 47 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant number in the national economy that the claimant could have perform (20 CFR 404.1569 and 404.1569(a)).

* * *

11. The claimant was not under disability, as defined in the Social Security Act, at any time from September 15, 2012, the alleged onset date, through June 30, 2014, the date last insured (20 CFR 404.1520(g)).

*Id.* at 25-36.

Plaintiff's request for Appeals Council review was denied on March 15, 2017 leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 6-10.

II. Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.     Analysis

Plaintiff argues that the ALJ erred by rejecting the opinion of his treating physician, Dr. Jason Whitmore. ECF No. 13.

A.     Relevant Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

B.     Medical Opinion Evidence

On March 5, 2015, plaintiff's treating physician, Dr. Jason Whitmore, opined that plaintiff could lift and carry 10 pounds occasional and less than 10 pounds frequently, stand and walk for

less than two hours in an eight-hour, sit for less than two hours in an eight-hour workday, and would need to periodically alternate between sitting, standing, or walking to relieve discomfort. *Id*. at 1086. Specifically, he concluded that plaintiff could only sit for ten minutes and stand for five minutes before needing to change positions, and he would need to walk around for ten minutes every 90 minutes. *Id*. It was also his opinion that plaintiff: could occasionally twist, stoop, and climb stairs, but never climb ladders or crouch; was limited in his ability to push/pull, kneel, balance, and crawl; and may need to use a cane due to pain and right leg numbness. *Id*. at 1087.

In March 2013, plaintiff underwent a comprehensive internal medicine evaluation, which was completed by examining physician Dr. Jonathan Schwartz. *Id*. at 587-91. Based on his examination, Dr. Schwartz opined that plaintiff could stand and walk up to six hours; sit, lift, and carry, without limitation; and frequently stoop.

The record also contains opinions from two non-examining physicians, Dr. G. Williams and Dr. Jonathan Nordlicht. Dr. Williams opined that plaintiff lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; frequently climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, crawl, and finger; but should avoid concentrated exposure to hazards due to taking potent narcotic medication. *Id*. at 83-85. Dr. Nordlicht largely agreed with Dr. Williams opinion, but concluded that plaintiff could only occasionally climb ladders, ropes, and scaffolds, and was also limited in fingering with his right hand. *Id*. at 99-101.

C. Discussion

The ALJ purported to give "partial weight" to Dr. Whitmore's opinion, but omitted significant portions of the treating opinion in her RFC determination. AR 28, 34-35. The ALJ provided several reasons for why Dr. Whitmore's opinion was discounted, none of which satisfy the specific and legitimate standard. *See Lester*, 81 F.3d at 830 (ALJ must provide specific and legitimate reasons for rejecting a treating physician's contradicted medical opinion).

First, the ALJ concluded that the opinion was internally inconsistent, finding that Dr. Whitmore's "sit/stand/walk limitations appear to be inconsistent with each other." AR 34. As

5

discussed above, Dr. Whitmore opined that plaintiff could sit for less than two hours total in an eight-hour workday, stand and walk for less than two hours total in an eight-hour work day, sit for 20 minutes at one time before needing to change position to relieve discomfort, stand for five minutes before needing to change positions to relieve discomfort, and he would need to walk around for 10 minutes every 90 minutes. *Id*. at 1086. There is nothing inconsistent between these limitations. The lack of any apparent inconsistency in these "sit/stand/walk" limitations is highlighted by the Commissioner's defense of the ALJ's finding. The Commissioner argues that the opinion that plaintiff is limited to standing/walking and sitting for less than two hours each is inconsistent with the opinion that plaintiff can occasionally—defined by the Commissioner as up to 1/3 of an eight-hour day—twist, stoop, and climb. ECF No. 15 at 10. The ALJ, however, did not find that the standing/walking/sitting limitations assessed by Dr. Whitmore were inconsistent with his opinion as to plaintiff's postural limitations.[1] Rather, she simply concluded, without elaboration, that the "sit/stand/walk limitations appear to be inconsistent with each other." AR 34.

      The only plausible explanation for the ALJ's finding was that she misconstrued Dr. Whitmore's opinion to be that plaintiff lacked the ability to stand and/or walk for more than five minutes at one time, which would be inconsistent with the opinion that plaintiff must walk around for 90 minutes. However, the form completed by Dr. Whitmore did ask how long plaintiff could continuously walk and/or stand before needing a break. Instead, it merely sought information regarding plaintiff's need to "periodically alternative sitting, standing or walking to relieve discomfort." Dr. Whitmore's opinion that after 5 minutes of standing plaintiff would need to change positions, either by sitting or walking, is not inconsistent with the opinion that plaintiff needs to walk around for 10 minutes every 90 minutes.

      Next, the ALJ concluded that Dr. Whitmore's opinion was not consistent with the record as a whole and was "overly restrictive compared to the objective evidence and [plaintiff's]

---

[1] Nor is there any inconsistency between the assessed limitations in standing, walking, and sitting, and the restriction to occasional postural manipulation. The form completed by Dr. Whitmore defines occasionally as ranging from "*very little up* to 1/3 of an 8 hour day." AR 1087 (emphasis added).

6

conservative treatment." The ALJ, however, failed to discuss any specific evidence in the record that was inconsistent with Dr. Whitmore's opinion. Such a conclusory rejection falls far short of satisfying the specific and legitimate standard, which requires the ALJ to set "out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] [her] interpretation thereof, and mak[e] findings." *Trevizo v. Berryhill*, 871 F.3d 664,675 (9th Cir. 2017). As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

*Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

The ALJ's unsupported conclusion that Dr. Whitmore's opinion is not supported by the evidence of record fails to satisfy this standard. Nor did the ALJ identify the specific treatment she believed to be conservative. This is especially troubling given her acknowledgment that plaintiff was consistently treated with fentanyl, as well as morphine and other strong narcotic pain medications. AR 30-33; *see, e.g.,* 398 (prescribed morphine for backpain), 575 (took soma without relief), 698 (prescribed fentanyl and norco), 996 (increased dose of fentanyl due to lower dose being ineffective). That treatment regimen can hardly be characterized as conservative. *See Molter v. Astrue*, 2010 WL 2348738, at *5 (E.D. Cal. June 8, 2010) (ALJ incorrectly referred to treatment as conservative where fentanyl was given because "[f]entanyl is a heavy duty medication prescribed for chronic pain. Fentanyl is not prescribed willy-nilly as there are serious potential side effects."); *Doresett v. Colvin*, 2017 WL 840694, at *16 (D. Ariz. Mar. 3, 2018 (finding error where the ALJ did "not explain how she came to the conclusion that the use of powerful opioid pain medications such as Fentanyl, Vicodin, Opana, and MS contin is 'routine.'").

The ALJ also concluded that Dr. Whitmore's opinion was entitled to less weight because it appeared that the opinion was based primarily on plaintiff's subjective complaints. AR 35.

/////

The opinion of a treating physician may be rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). However, an ALJ does not provide sufficient "reasons for rejecting [a] physician's opinion by questioning the credibility of the [plaintiff's] complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec. Admin*, 528 F.3d 1194, 1200-01 (9th Cir. 2008).

As observed by the ALJ, Dr. Whitmore stated that his opinion that plaintiff would need to lie down at unpredictable intervals was based in part on plaintiff's reports that he lays down frequently on a daily basis. *Id*. at 35, 1086. But Dr. Whitmore also stated that his opinion was based on MRIs showing multilevel degenerative joint disease of the cervical and lumbar spine, *id*. at 1086, objective findings that are entirely consistent with plaintiff's reports to the doctor. Dr. Whitmore did not discredit plaintiff's complaints, he specifically relied on them in conjunction with his own findings and observations in forming his medical opinion. Accordingly, Dr. Whitmore's reliance on plaintiff's subjective complaints is not a specific and legitimate reason for rejecting his treating opinion.

Lastly, the ALJ concluded that Dr. Whitmore's opinion is overreaching because the physician stated that the assessed limitations began in 2004, but plaintiff was able to work until November 2008. AR 35. As observed by plaintiff, it is difficult to discern from Dr. Whitmore's handwriting whether he concluded that plaintiff's impairments began in 2004 or 2009. *See id.* at 1087. Given this ambiguity, as well the insufficiency of the other proffered reasons, the court cannot find that this last reason justifies the rejection of Dr. Whitmore's opinion.

D. <u>Remand for Further Proceedings</u>

"A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotes and citations omitted). A district court may remand for immediate payment of benefits only where "(1) the ALJ has failed to provide legally sufficient

reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 563 (9th Cir. 2004). However, even where all three requirements are satisfied, the court retains "flexibility" in determining the appropriate remedy. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Dominguez*, 808 F.3d at 407.

Given the conflicting medical opinions, as set forth above, the court cannot find that further administrative proceedings would serve no useful purpose. Accordingly, remand for further proceedings is appropriate.

IV. <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor and close the case.

DATED: September 20, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE